# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

ANGELA BATTLES, )
)
      Plaintiff )
)
vs. )   Case No. 4:18-cv-00157-HNJ
)
NANCY A. BERRYHILL, )
Acting Commissioner of )
Social Security, )
)
      Defendant. )

## MEMORANDUM OPINION AND DISMISSAL ORDER

Plaintiff Angela Battles seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Disability Insurance Benefits and Supplemental Security Income. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20

C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC,

age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates

against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Applying the five-step sequential process, the ALJ found at step one that Battles met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 12). The ALJ further found Battles had not engaged in substantial gainful activity since January 8, 2015, the alleged onset date. (*Id.*) At step two, the ALJ found that Battles suffers the following severe impairments: affective disorder, anxiety disorder, and personality disorder. (*Id.*) At step three, the ALJ concluded that Battles's impairment or combination of impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Next, the ALJ found that Battles exhibited the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain limitations.[2] (Tr. 15). At step four, the ALJ found Battles could perform her past relevant work as a cleanup worker and storage laborer/stocker. (Tr. 19).

---

[2] The ALJ described the following limitations:

> [The claimant can perform] no more than simple routine job tasks, performed in a work environment requiring no contact with the general public and no more than occasional contact with coworkers.

On December 1, 2017, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1). On January 31, 2018, Battles filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Ms. Battles contends substantial evidence does not support the ALJ's decision. Specifically, she argues that substantial evidence does not support the ALJ's RFC calculation. Battles also asserts the ALJ improperly accorded little weight to the examining psychiatrist's opinion. Finally, Battle contends the Appeals Council erred in refusing to consider new evidence from Harriette Brown, M.A., and Dr. Fredric Feist and, had the Appeals Council considered this evidence, the ALJ's decision no longer rests upon substantial evidence. After consideration of the record and the ALJ's decision, the court finds substantial evidence supports the ALJ's determination.

### A. Substantial Evidence Supports the ALJ's RFC Formulation

"Residual functional capacity" represents "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. A "regular and continuing basis" corresponds to eight hours a day, for five days a week, or an equivalent work schedule. *Id.* The regulations define RFC as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC, the ALJ considers a claimant's

"ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources," as well as "descriptions and observations [provided by the claimant, family, neighbors, friends, or other persons] of [the claimant's] limitations. . ., including limitations that result from . . . symptoms such as pain." 20 C.F.R. § 404.1545(a)(3). The claimant bears the burden of providing evidence the Commissioner will use to establish an RFC. *See* 20 C.F.R. § 404.1512(c). The responsibility for determining a claimant's RFC resides with the ALJ. 20 C.F.R. §§ 404.1527(e), 404 .1546(c); SSR 96–5p.

Social Security Ruling 96–8p dictates that an RFC assessment must first determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, pursuant to the functions described in 20 C.F.R § 404.1545 paragraphs (b), (c), and (d) and § 416.945. The ALJ does not need to enumerate every piece of evidence or function used in his determination, but rather must simply show that he considered the claimant's medical conditions in totality. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Once the ALJ has conducted that determination, the ALJ may then express the RFC in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see Castel*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220

F. App'x 957, 959–60 (11th Cir. 2007); *see also Bailey v. Astrue*, 5:11–CV–3583–LSC, 2013 WL 531075 (N.D. Ala. Feb.11, 2013).

Battles generally faults the ALJ's RFC assessment as a whole, asserting her medical evidence weighs heavily against the ALJ's findings. For the reasons discussed below, the undersigned disagrees.

Battles's treatment records support the ALJ's RFC finding. In August 2013, Battles visited the Emergency Department at RMC Jacksonville seeking to detox from a possible overdose of hydrocodone. (Tr. 285). Medical personnel admitted her for drug detox, and she exhibited normal physical and mental findings during her examination. (Tr. 285-86, 289). Medical personnel assessed Battles's symptoms as those of opioid dependence, and they admitted Battles to the progressive care unit for withdrawal procedure. (Tr. 291). During her physical examination the following day, Battles displayed a regular heart rate, clear lungs, soft and nontender abdomen, and no edema. (Tr. 292). Battles also operated within all physiological limits neurologically. (Tr. 292). Medical personnel discharged her the following day with a plan to seek treatment. (Tr. 294).

The day after Battles left the emergency room, she visited CED Mental Health for an evaluation. (Tr. 332). Battles complained of anxiety, stress, high blood pressure, and depression related to her addiction. (*Id.*)

Approximately a week later, Battles visited the Alabama Department of Mental Health and underwent a SASD Adult Integrated Placement Assessment with Susan

Reid, MSW. (Tr. 348-56). Battles stated she suffered from a history of withdrawal symptoms, including anxiety, and it impacts her ability to participate in social activities. (Tr. 348). Her substance abuse history included alcohol, marijuana, other opiates and synthetics, methamphetamine, and benzodiazepines. (*Id.*) Battles attributed any physical pain she feels to withdrawal, and admitted to fleeting thoughts of suicide. (Tr. 349-50).

During the mental status examination, Reid noted Battles's normal orientation; appropriate dress; flat, sad, and fearful facial expression; depressed and anxious mood; flat affect; low self-esteem; soft speech; intact immediate, recent, and remote memory; and logical and coherent thought process. (Tr. 351). Reid assessed that Battles is aware of the negative effects of her drug use and is in the contemplation stage of readiness to begin treatment. (Tr. 352). Reid diagnosed Battles with opioid dependence with physical dependency, and identified Battles as likely facing problems with primary support group; problems related to social environment; occupational problems; economic problems; problems with access to healthcare services; and other psychological and environmental problems. (Tr. 356). Reid concluded that the level of care required for Battles consisted of intensive outpatient treatment. (*Id.*)

In November 2013, Battles underwent an assessment at CED Mental Health by Ashley Bradford, MS, NCC. (Tr. 341). During this intake assessment, Battles admitted to moodiness, daily crying spells, difficulty focusing, daily depressive episodes, stress, and mood swings. (Tr. 341). Battles denied suicidal ideations, but stated she struggles

with hopelessness. (Tr. 341, 344). Bradford's diagnostic impressions of Battles included: (1) Bipolar I disorder: most recent episode depressed, moderate; (2) generalized anxiety disorder; and (3) hypertension. Bradford also noted likely issues for Battles regarding: (1) problems with primary support group, (2) housing problems, and (3) economic problems. (Tr. 345). Bradford recommended individual therapy, positive mental attitude, and a continuation of post-drug-rehabilitation aftercare. (*Id.*)

In April 2014, Battles visited CED Mental Health and completed a pre-treatment plan assessment. (Tr. 326-27). Medical personnel diagnosed Battles with bipolar I disorder, generalized anxiety disorder, hypertension, and problems with primary support. (Tr. 325). Battles described her desire to maintain control of her emotions, and identified anxiety and depression as her barriers. (Tr. 326). Battles sought to learn coping skills to help manage her anxiety and depression, and identified her goal to improve stress management and engage in social activity. (Tr. 327). Medical personnel put her on a treatment plan of individual therapy every five weeks and a psychiatrist appointment every six months. (*Id.*)

Battles visited the emergency department in November 2014 after overdosing on Klonopin . (Tr. 299). Medical personnel admitted Battles to the intensive care unit, where she presented normal physical examination findings but exhibited a depressed mood and suicidal thoughts. (Tr. 301, 307-08). Over a stay of five days, Battles received one-to-one observation and psychiatric consultation. (Tr. 307). Personnel diagnosed Battles with anxiety disorder and recurrent and severe major depressive

disorder, and her symptoms continued to improve on a low dose of Xanax. (Tr. 310-11). Battles also received diagnoses of opioid dependence, amphetamine abuse, and hypertension. (Tr. 311). Battles agreed to attend a substance abuse program. (Tr. 310).

In January 2015, Battles visited Trinity Medical Center of Birmingham's emergency department with symptoms related to an overdose. (Tr. 370). Her initial physical examination demonstrated no acute distress and described Battles as cooperative, alert, and having an appropriate mood and affect. (Tr. 362). Medical personnel admitted Battles to inpatient psychiatric care, and she stayed for five days. (Tr. 366). Personnel put Battles on lithium, and she reported notable improvements in her symptoms over the following days. (Tr. 364-65). Two days into her stay, personnel described Battles as pleasant, engaging, cooperative, nonpsychotic, nonsuicidal, alert and oriented to time and place, and somewhat anxious. (Tr. 368). Battles denied any suicidal ideations and presented grossly intact cognition, but personnel observed impaired insight and judgment. (*Id.*) Upon discharge, personnel diagnosed Battles with: (1) mood disorder, not otherwise specified; (2) benzodiazepine dependence; and (3) borderline personality disorder. (Tr. 369). Battles admitted to depression, worry, fear, and vague suicide thoughts. (Tr. 367). Battles began aftercare with CED Mental

Health and planned to participate in a dialectical behavioral therapy[3] group at Gadsden Regional Hospital. (Tr. 366).

Battles began individual therapy at CED Mental Health in January 2015. (Tr. 328). She exhibited an anxious mood, fair insight and judgment, logical thought process, adequate attention, and appropriate behavior. (*Id.*) In March 2015, Battles presented with a neat appearance, elevated mood, and normal affect. (Tr. 379). Battled rated her level of anxiety as a 6 out of 10 and explained that she goes on walks whenever she feels her anxiety increasing. (*Id.*) She confirmed that she still attended dialectical behavioral therapy classes and expressed her goal of obtaining positive coping skills. (*Id.*)

During her April and May 2015 appointments at CED Mental Health, Battles displayed an appropriate appearance, euthymic mood, and normal affect. (Tr. 378-79). Battles reported continued improvement with her anxiety and had identified triggers related to her anxiety. (*Id.*) Battled stated her anxiety increases when in public or whenever she is around a lot of noise, but she admitted that walks help relieve her symptoms. (*Id.*) Battles indicated that she kept herself occupied by completing chores and going for walks. (Tr. 379).

---

[3] Dialectical behavioral therapy is defined as "a form of psychological counseling in which patients are directed to change dysfunctional behavior patterns within a context of acceptance and compassion. It is used principally to manage personality disorders." https://medical-dictionary.thefreedictionary.com/Dialectical+behavior+therapy (last visited Mar. 26, 2019)

Battles underwent an examination with Dr. Richard Grant at CED Mental Health in June 2015, and he noted Battles's depressive and euthymic mood and affect. (Tr. 373). Battles reported a normal sleep pattern, and she exhibited fair insight and judgment, logical thought process, adequate attention and concentration, fair appetite and energy, and appropriate behavior. (*Id.*) Medical personnel completed a Consumer Diagnosis Form for Battles in November 2015, identifying her diagnoses as the following: (1) bipolar disorder, depressed; and (2) generalized anxiety disorder. (Tr. 387). During her appointments in November and December 2015, Battles exhibited an appropriate appearance, euthymic mood, and normal affect. (Tr. 393, 395). Battles reported an improvement in her symptoms related to her depression, and medical personnel recommended adjustments in her medication after Battles expressed concerns about possible side effects that raised her anxiety. (*Id.*) Battles stated that she was doing well overall. (Tr. 393).

In January 2016, Battles returned to CED Mental Health and displayed an anxious mood, fair insight and judgment, logical thought process, adequate attention and concentration, fair appetite and energy, and appropriate behavior. (Tr. 392). Battles reported stabilization in her symptoms, yet indicated her medication made her drowsy at times. (*Id.*)

During her May and June 2016 appointments, Battles exhibited an euthymic mood and normal affect, and remained oriented to time, person, place, and situation. (Tr. 386, 389-90). Battles stated she continued to experience mild-to-moderate

13

depression multiple days a week and had to take medication when going out in public. (*Id.*) Battles continued practicing positive coping skills and tried avoiding crowds when going on walks. (Tr. 389). During her June 2016 appointment, personnel noted that Battles displayed poor focus and concentration. (*Id.*)

The ALJ properly held that Battles's medical records fail to support the existence of limitations greater than the RFC calculation. The ALJ noted Battles's unremarkable physical and mental examination findings during her overnight stays, and how her records consistently noted improvement upon the use of more conservative treatments. (Tr. 16-17). The ALJ highlighted Battles's exclusive treatment with CED Mental Health from April 2015 through June 2016, stating that despite Battles's subjective complaints, she consistently exhibited unremarkable findings. (Tr. 18). The ALJ included two key nonexertional limitations for Battles's RFC: (1) no more than simple routine job tasks; (2) that are performed in a work environment requiring no contact with the general public and no more than occasional contact with coworkers. The court finds Battles's medical evidence supports these limitations. Therefore, substantial evidence supports the ALJ's RFC finding.

### B. The ALJ Properly Weighed the Examining Psychologist's Opinion

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. §404.1527(c);

*see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011)(stating that the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole"). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 895 (11th Cir. 2015)(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). However, the ALJ must "state with at least some measure of clarity the grounds for his decision." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This measure of clarity requires the ALJ to state the weight given to each medical opinion and the reason therefor. *Id.*

Battles contends the ALJ improperly accorded little weight to the opinion of Dr. Samuel Fleming, Battles's examining psychologist. The ALJ stated that Dr. Fleming's opinion was inconsistent with the treatment records he reviewed for his evaluation of Battles. Furthermore, the ALJ noted Dr. Fleming did not have access to all of the medical evidence subsequently made part of the record and was therefore unable to develop an accurate review of Battles's impairments. (Tr. 18).

After examining Battles in July 2015, Dr. Fleming completed an evaluation. (Tr. 276-80). Dr. Fleming noted Battles's past medical history, including Battles's report that medication helped with her sleeping and anxiety, yet continued to struggle with mood swings, fatigue, and concentration issues. (Tr. 276). Dr. Fleming further noted Battles's lack of unusual mannerisms and that she remained cooperative and alert

throughout the exam. (Tr. 277). Battles stated that her daily activities include doing laundry, preparing meals, and completing chores. (*Id.*)

Dr. Fleming performed a mental status examination on Battles, and identified the following findings: (1) Battles maintained marginally adequate concentration and attention; (2) Battles was deficient in her immediate recall of digits forward, but adequate in her immediate recall of digits backward; (3) Battles had adequate recent memory but deficiencies in delayed recall; (4) Battles possessed a marginally adequate general fund of information; (5) Battles remained deficient in her abstraction abilities; and (6) Battles maintained adequate judgment and insight. (Tr. 278). Battles admitted to symptoms of mania and depression, which sometimes included suicidal ideation and intent. (*Id.*)

Dr. Fleming opined that Battles fell within the low average range of intellectual abilities and that she experienced anxiety in certain situations. (Tr. 279). He diagnosed Battles with the following: (1) bipolar I disorder, most recent episode, depressed; (2) panic disorder with agoraphobia, deferred; (3) mitral valve prolapse; (4) high blood pressure; (5) chronic back pain; (6) a GAF score of 55; and (7) social interaction problems, including poor coping skills. (*Id.*) Dr. Fleming opined a poor prognosis for Battles, stating that Battles was not attending sessions with her psychiatrist or therapist often enough. (*Id.*) Dr. Fleming further opined that Battles "lacks the judgment to manage financial benefits" and "is not capable of functioning independently." (Tr. 280). Although he confirms Battles's ability to understand and

carry out simple instructions with close supervision, he highlights Battles's lack of emotional capability to respond appropriately to supervision, coworkers, or pressures in a work setting. (*Id.*)

The ALJ properly assessed Dr. Fleming's opinion by providing specific reasons for assigning little weight to the opinion. The court finds that substantial evidence supports these reasons. Dr. Fleming's opinion remains inconsistent with Battles's medical records, as Battles displayed generally unremarkable findings during her therapy appointments at CED Mental Health in 2015 and 2016. (Tr. 18). The ALJ also highlighted Dr. Fleming's GAF[4] score of 55 for Battles – a score that only indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. (*Id.*) This score vastly differs from Dr. Fleming's opinion of Battles's mental limitations.

Based on the preceding review and the previous review of Battles's medical record, the court finds that the ALJ properly assessed Dr. Fleming's opinion.

## C. The ALJ Properly Considered Battles's New Evidence

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). The Appeals Council retains discretion to

---

[4] A Global Assessment of Functionality (GAF) score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000). A GAF score of 51–60 indicates moderate impairments. *Id.* at 34.

decline review of an ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2012). However, the Appeals Council must consider evidence that is (1) new, (2) material, and (3) chronologically relevant. *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)). The new evidence is material if it is relevant and probative "so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)(citations omitted). The evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)(holding that the Appeals Council must evaluate the entire record, including the new and material evidence submitted if it relates to the period on or before the date of the ALJ hearing decision).

The court must consider whether the new evidence submitted to the Appeals Council renders the ALJ's decision erroneous by undermining the substantial evidence supporting the ALJ's decision. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F. 3d 780, 785 (11th Cir. 2014). Battles submitted a medical source statement from Harriette Brown, M.A., and a response to a questionnaire from Dr. Fredric Feist, both dated June 28, 2017. The Appeals Council found the evidence did not present a reasonable probability it would change the outcome of the ALJ's decision, and therefore did not consider or exhibit the evidence. (Tr. 2). Battles contends the Appeals Council applied the wrong legal standard in considering the additional evidence because there is a reasonable

probability that Brown and Dr. Feist's opinions would change the administrative outcome.

On June 28, 2017, Harriette Brown, a clinical mental health counselor, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (Tr. 31). In her statement, Brown opined that Battles's impairments affected her ability to understand, remember, and carry out instructions. Brown further opined Battles faced extreme[5] restrictions in her ability to: (1) make judgments on simple work-related decisions; (2) carry out complex instructions; and (3) make judgments on complex work-related decisions, and marked[6] restrictions in her ability to: (1) understand and remember simple instructions; (2) carry out simple instructions; and (3) understand and remember complex instructions. (Tr. 31). Brown identified factors such as lack of concentration and focus, memory problems, anxiety around individuals and groups, panic attacks, and mood swings that supported her assessment.

Brown opined that Battles faced extreme limitations in her ability to interact appropriately with the public, supervisor(s), and co-workers, as well as to respond to usual work situations and to changes in a routine work setting. (Tr. 32). Brown identified factors including anxiety and panic attacks triggered by interactions with

---

[5] According to the Medical Source Statement, "extreme" connotes "major limitation" and "no useful ability to function in this area." (Tr. 31).

[6] According to the Medical Source Statement, "marked" connotes "serious limitation" and "a substantial loss in the ability to effectively function." (Tr. 31).

others, and problems with concentration, focus, and memory, that supported her assessment. (*Id.*) Brown also opined Battles faced an additional impairment of having trouble leaving home to be in a work environment, basing her finding on Battles struggles with anxiety and panic attacks whenever she left home for a certain period of time. (*Id.*) Brown opined Battles's symptoms would occur regardless of substance use, yet Battles can manage benefits in her own best interests. (Tr. 32-33).

In addition on June 28, 2017, Dr. Feist responded to a questionnaire presented by Battles's former attorney regarding Battles's mental limitations. Dr. Feist answered the following: (1) Battles's diagnosis consists of bipolar I disorder, depressed, moderate and generalized anxiety disorder; (2) Battles's overall mental condition is best described as moderate/severe; (3) based on her overall mental condition, Battles should perform at a sedentary level of exertion; (4) Dr. Feist did not expect her condition to improve within the next twelve months; and (5) Dr. Feist did not expect Battles to be gainfully employed at any level of exertion. (Tr. 35-36). Dr. Feist opined that with medication and individual therapy, Battles remained stable at her baseline, with no triggers or stressors that the workplace would involve. (Tr. 36).

The Appeals Council found that neither opinion presented a reasonable probability that it would change the outcome of the ALJ's decision. Therefore, the Appeals Council implicitly found that both Brown and Dr. Feist's statements constituted new evidence, expressly found that neither statements were material, and implicitly found that both opinions constituted chronologically relevant evidence. *See*

*Mitchell*, 771 F. 3d at 784-85. The Appeals Council was not required to provide a more detailed explanation of why it denied Battles's request for review. *Id.*

After independent review, the court agrees with the Appeals Council's finding. Regarding Brown's findings, she provides no medical evidence to support her assessment. Furthermore, her findings run contrary to the weight of Battles's treatment records. Brown opined that Battles faces extreme restrictions in her ability to make judgments on simple work-related decisions, yet the medical evidence consistently exhibits Battles's fair judgment and logical thought process. Brown's findings also contradict Battles's daily activities, including driving, completing chores, shopping, and caring for her daughter. (Tr. 393). Therefore, the Appeals Council properly determined Brown's statement did not constitute a reasonable probability that it would change the ALJ's decision.

Regarding Dr. Feist's assessment, he provides no further explanation for his findings and also fails to refer to medical evidence to support his findings. Additionally, Dr. Feist's conclusion that Battles could not be gainfully employed at any level of exertion goes beyond the reach of a medical opinion and invades the province of the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The Appeals Council therefore properly determined that Dr. Feist's opinion does not undermine the substantial evidence supporting the ALJ's decision.

## Conclusion

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** this 27th day of March, 2019.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE